**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | |
|---|---|
| ADAM WOOD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GREEN ARROW SOLUTIONS, d/b/a GREEN ARROW LOANS,<br><br>Defendant. | **Case No.** 4:26-cv-147-GNS<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Adam Wood ("Plaintiff") brings this class action lawsuit on behalf of himself and all others similarly situated, by and through undersigned counsel, and hereby alleges the following against Defendant Green Arrow Solutions, d/b/a Green Arrow Loans ("Green Arrow" or "Defendant"). Facts pertaining to Plaintiff and his experiences and circumstances are alleged based upon personal knowledge, and all other facts alleged herein are based upon investigation of counsel and—where indicated—upon information and good faith belief.

## NATURE OF THE ACTION

1. On its website, Green Arrow touts to its customers short-term installment loans to consumers across the country, including consumers with poor credit.

2. Indeed, Defendant takes advantage of people at their most vulnerable, in desperate moments of financial hardship, and thumbs its nose at the statutory laws of the Commonwealth of Kentucky by employing a scheme to charge customers illegal usurious interest rates of 700 percent to over 850 percent.

3. To do this, Defendant represents that Green Arrow is a tribal lending entity that is wholly owned by the Big Valley Band of Pomo Indians (the "Tribe"), a federally recognized Indian Tribe. In reality, Defendant operates a "rent-a-tribe" scheme in order to circumvent state usury laws, including the laws of the Commonwealth of Kentucky.

4. A "rent-a-tribe" scheme is a colloquial phrase used to describe the business practices of non-tribal payday lenders, including Defendant, hiding behind the guise of a Native American tribe in order to avoid usury laws by invoking sovereign immunity.

5. Plaintiff Adam Wood brings this action to secure redress from predatory and unlawful loans issued and enforced by Defendant.

6. Plaintiff seeks a declaratory judgment that the loans are void under KRS 360.010 (Count I), and damages pursuant to KRS 360.020 (Count II) and KRS 367.110 (Count III).

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) as well as 1332(d) because this case is brought as a class action where the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

8. This Court has personal jurisdiction over Defendant because Defendant has intentionally directed its business activities in Kentucky, targeting the Kentucky market, and purposefully availed itself of the privilege of conducting business in this state, including by targeting Kentucky as a state in which to offer loans. In addition, the conduct underlying the claims that caused Plaintiff's injuries took place in Kentucky; that is, Defendant entering into and

collecting payment on its usurious loans occurred in this state, which was foreseeable to Defendant.

9. Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because a substantial part of the events giving rise to this action occurred in this District, including entering into and collecting payment on the loans.

## PARTIES

10. Plaintiff Adam Wood is a natural person who at all times relevant to this matter resided in Owensboro, Daviess County, Kentucky.

11. Plaintiff Adam Wood moved to Minot, North Dakota in or around November 18, 2024.

12. Defendant Green Arrow Solutions purports to be an entity created and owned by the Tribe. As set forth below, it is not owned by the Tribe.

13. Green Arrow Solutions does business as Green Arrow Loans via its website, www.greenarrowloans.com (the "Website").

14. On its website, Green Arrow makes loans at interest rates in excess of 700% annually to consumers in many states, including Kentucky.

## FACTS

15. On or about February 6, 2024, Plaintiff obtained a loan from Defendant in the amount of $700.00 at an annual percentage rate of 744.98%. A true and correct copy of the loan agreement is attached hereto as Exhibit 1.

16. The loan agreement provided for a contract interest rate of 744.98% per year, with a finance charge of $1,985.15, resulting in a total of payments of $2,685.15 on a principal of just $700.00.

17. The loan agreement is a standard form.

18. The loan was made for personal purposes and not for business purposes.

19. The principal amount was transferred to Plaintiff's bank account in Kentucky via ACH.

20. The loan was made entirely via the Internet.

21. The loan was to be repaid via ACH.

22. Plaintiff made some of the payments, including interest. Defendant claims Plaintiff still owes money on the loan.

23. Plaintiff was a resident of Kentucky at all relevant times.

24. At no time did Plaintiff visit any business premises of Defendant in connection with the loans.

25. Defendant intentionally violated Kentucky's rate limitations because they concluded Kentucky authorities were unlikely to take action to enforce their usury laws against them.

**KENTUCKY'S PROHIBITIONS ON PREDATORY LOANS**
**Kentucky Revised Statutes Chapter 360**

26. Effective July 14, 2018, KRS 360.010 governs the legal interest rate that may not be exceeded with respect to residents of the state. KRS 360.010 forbids, with limited exceptions that do not apply here, parties from agreeing to a per annum interest rate higher than 8%.

27. Under KRS 360.020, the knowing "taking, receiving, reserving, or charging of an interest rate greater than is allowed by KRS 360.010 … shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it." Where greater interest has been paid, the statute provides for "twice the amount of interest thus paid from the creditors taking

or receiving the same: provided, that such action commenced within two (2) years from the time that the usurious transaction occurred." KRS 360.020(1).

28. Any loans to Kentucky residents at more than 8% that are made by lenders violate KRS 360.010 and are subject to damages under KRS 360.020.

## INVALIDITY OF CLAIM OF TRIBAL IMMUNITY

29. In an attempt to evade prosecution under usury laws of states like Kentucky, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

30. Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

31. The illegal payday loans are then made in the name of a Native American tribal business entity which purports to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation—funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections—are performed by individuals and entities that are unaffiliated with the tribe.

32. In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

33. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

34. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough*, at 1183, 1187-88.

35. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

36. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

37. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

38. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and

Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

39. While Green Arrow purports to be a tribal entity, it is not.

40. The actual lending operations are carried out and continue to be carried out in locations other than tribal lands.

41. No member of the Tribe participates in significant lending operations.

42. The profits from the lending activities are received by non-members of the Tribe.

43. The business operations of Green Arrow, including incoming and outgoing phone calls and emails, review of loan applications, underwriting, payment processing, website maintenance, and marketing, are conducted outside of the Tribe's reservation. On information and belief, they are conducted in North Logan, Utah, outside of the Tribe's reservation for the benefit of persons who are not members of the Tribe.

44. The Website refers specifically to operations within "MST" (Mountain Standard Time), which is inconsistent with the Tribe's location in Pacific Time Zone.

45. On information and belief, Green Arrow's website is hosted in Los Angeles, California, not on tribal lands.

46. Green Arrow states on its website that "We do not always lend in every state. Our states of operation change frequently; please check back periodically to see if we are doing business in your state." On information and belief, the list of states in which Defendant does not make loans depends on the likelihood it will face public or private enforcement actions.

47. The funds lent are transferred by ACH credit to the borrowers' bank accounts throughout the United States.

48. Repayment of the loans is made by ACH debit from the borrowers' bank accounts throughout the United States.

49. Defendant's lending activities do not actually occur on the Tribe's reservation.

50. A significant majority of the transaction occurs within the Commonwealth of Kentucky—applying for the loan and receiving and collecting the funds. The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 968 (9th Cir. 2018).

51. Plaintiff has never set foot on the Tribe's land.

52. Loans to Kentucky residents made in the same manner as the loan to Plaintiff are governed by the laws of the Commonwealth of Kentucky.

53. Defendant intentionally violated Kentucky's rate limitations because they concluded Kentucky authorities were unlikely to take action to enforce their usury laws against them.

## CLASS ALLEGATIONS

54. Plaintiff brings this action on behalf of a class of all similarly situated persons, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class (the "Class" or "Kentucky Class") is defined as follows:

> All persons residing in Kentucky who, within the relevant statutory period, entered into a loan agreement with Defendant Green Arrow Solutions or its subsidiaries/assumed names, and paid money pursuant to the agreement.

55. Specifically excluded from the class are: (1) Defendant, any entity in which Defendant has a controlling interest, and any of its affiliates, legal representatives, predecessors, successors, or assigns; (2) any federal, state, or local governmental entity; (3) any judge, justice,

or judicial officer presiding over this matter and the members of their immediate families and judicial staff; and (4) any and all persons who properly exclude themselves from the class by "opting out" of the Class in accordance with applicable law and instructions.

56. **Numerosity**: The members of the Class are so numerous that the joinder of all Class members is impractical. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

57. **Commonality**: There are questions of law or fact common to the Class that predominate over any questions affecting only individual members of the Class. The questions of law and fact common to the Class include but are not limited to:

a. Whether Defendant's loans to Kentucky consumers are usurious under Kentucky law;

b. Whether Defendant is entitled to tribal sovereign immunity;

c. Whether Defendant operates as a legitimate "arm of the tribe";

d. Whether Defendant violated KRS 360.010;

e. Whether Defendant's conduct was willfully or knowingly unlawful.

58. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources necessary to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

59. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

**COUNT I**
**VIOLATION OF KRS 360.010**
**Declaratory Judgment**
***(On behalf of Plaintiff and Kentucky Class Members)***

60. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

61. An actual and existing controversy of a justiciable nature exists between the parties with respect to the issues set out herein within the scope and meaning of 28 U.S.C. § 2201.

62. Defendant contracted for and collected loans at more than 8% interest from Plaintiff and the class members, in violation of KRS 360.010.

63. In accordance with 28 U.S.C. §§ 2201 and 2202, Plaintiff is entitled to a declaration that these agreements are void and unenforceable against the Plaintiff and the class members.

**COUNT II**
**VIOLATION OF KRS 360.020**
***(On behalf of Plaintiff and Kentucky Class Members)***

64. Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

65. Defendant has devised and engaged in a scheme to fund, issue, and collect usurious loans through a rent-a-tribe scheme.

66. Plaintiff has taken usurious loans from Defendant and was forced to personally guarantee these debts.

67. Defendant is not exempt from state usury laws, nor are the transactions that are the subject of this action exempt from state usury laws.

68. The interest charged by Defendant in connection with these transactions was in excess of the maximum interest rate permitted by KRS 360.010.

69. Plaintiff has in fact paid Defendant interest in excess of the maximum interest rate permitted by KRS 360.010.

70. Defendant knowingly and willfully entered into the loans with usurious intent.

71. As a result of the foregoing illegal acts and practices, the Defendant has surrendered its right to collect any interest on any of these amounts.

## COUNT III
## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT
## KRS 367.110, et seq.
***(On Behalf of Plaintiff & Kentucky Class Members)***

72. Plaintiff and the Class repeat and re-allege all other paragraphs of the Complaint as if fully set forth herein.

73. Defendant is a "person" for purposes of the Kentucky Consumer Protection Act ("KCPA"), KRS 367.110, et seq.

74. Defendant's conduct as alleged herein occurred in the conduct of trade.

75. The KCPA prohibits "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade." Any person who "purchases or leases goods or services primarily for personal, financial, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by Ky. Rev. Stat. § 367.170, may bring an action under the Rules of Civil Procedure . . . ." KRS 367.220.

76. Defendant violated the KCPA by intentionally violating Kentucky's rate limitations and attempting to circumvent state usury laws by fraudulently and deceptively hiding behind tribal sovereign immunity. Defendant had an ongoing duty to Plaintiff and the Class to refrain from unfair and deceptive practices under the KCPA in the course of its business.

77. Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's unfair, fraudulent, and deceptive behavior.

78. Defendant's unfair, fraudulent, and deceptive conduct was either knowing, willful, and intentional, or, alternatively, demonstrated a lack of care, recklessness, or conscious disregard for the rights of Plaintiff and the Class, and thus Plaintiff and the Class are entitled to punitive damages.

79. Defendant is liable to Plaintiff and the class members for damages in amounts to be proven at trial, including attorney's fees, costs, and punitive damages, as well as injunctive relief enjoining Defendant's unfair and deceptive practices, and any other relief deemed just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Putative Class Members demand judgment in their favor against Defendant Green Arrow Solutions d/b/a Green Arrow Loans, and seek an order:

a) Certifying the proposed Class;

b) Appointing Plaintiff as Class Representative;

c) Appointing counsel for Plaintiff as Class Counsel;

d) Permanently enjoining Defendant from engaging in the unlawful practices;

e) Awarding Plaintiff compensatory, direct, consequential, statutory, and punitive damages, including prejudgment interest, in an amount to be determined at trial;

f) Requiring Defendant to pay Plaintiff's attorneys' fees, costs, and expenses; and

g) Granting such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

Dated: February 6, 2026

Respectfully submitted,

**/s/ Amanda M. Lockaby**
Matthew T. Lockaby
Amanda M. Lockaby
Abigail C. Wearden
Lockaby PLLC
476 East High Street, Suite 200
Lexington, Kentucky 40507
Tele: 859.263.7884
Fax: 859.406.3333
Email: mlockaby@lockabylaw.com
alockaby@lockabylaw.com
awearden@lockabylaw.com

**/s/ Matthew J. Langley**
Matthew J. Langley
*(pro hac vice forthcoming)*
Almeida Law Group LLC
849 W. Webster Avenue
Chicago, IL 60614
Tele: 773.554.9354
Email: matt@almeidalawgroup.com

*Counsel for Plaintiff and the Class*